## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**FREDERICK C. STEVENS,**

      **Petitioner,**

**v.**                                     **Case No. 8:21-cv-1440-TPB-CPT**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**
_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Frederick C. Stevens, a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Having considered the petition, Respondent's response in opposition (Doc. 5), and Stevens's reply (Doc. 6), the Court **DENIES** the petition.

## Background

On July 29, 2017, the Pinellas County Sheriff's Office responded to a burglary in progress at the residence of Michele Behish. (Doc. 5-2, Ex. 2, at 4). Police arrived as Stevens, Behish's ex-boyfriend, was pushing Behish out the front door. (*Id.*) Law enforcement ordered Stevens to "stop." (*Id.*) He responded by putting Behish in a chokehold and "dragging her back into the residence." (*Id.*) An officer ran toward the house, prompting Stevens to push Behish out the front door. (*Id.*) When law enforcement entered the house,

1

Stevens barricaded himself in a bathroom and yelled, "I've got a broken piece of glass, stay out." (*Id.*) Two officers "forced entry" into the bathroom and ordered Stevens to "show [] his hands." (*Id.*) Stevens refused, whereupon one officer tased him and the other put him in handcuffs. (*Id.*)

Meanwhile, law enforcement spoke with Behish. She explained that, approximately two weeks earlier, she had obtained a domestic-violence injunction against Stevens. (*Id.*) Despite the injunction, Stevens broke into the house through a "back window" around midnight. (*Id.*) Behish was "scared," and she agreed to accompany Stevens to a "local bar." (*Id.*) After some time, she left the bar with a friend, George Morgan, and returned to her house. (*Id.*) As Behish and Morgan were lying in bed, Stevens "appeared in the doorway with a screwdriver." (*Id.*) Morgan fled; Stevens "got on top of [Behish], grabb[ed] her by the neck, and chok[ed] her while the screwdriver was in the other hand." (*Id.*) Stevens "began to take [Behish's] pants off, at which time she pretended to stop moving and breathing." (*Id.*) At that point, Behish was able to "jump up" and run toward the front door. (*Id.*)

Stevens later told law enforcement, "I lost it man, I found her with another guy and I just lost it, I know I should not have done this." (*Id.* at 5). He also admitted that he "had been watching" Behish "all night at various times" outside the house, and that he had "confronted" Behish and Morgan when he "saw them kiss." (*Id.*)

2

Stevens was charged with one count of burglary of a dwelling with battery and one count of violation of a domestic-violence injunction. (*Id.*, Ex. 3). Because he qualified as a prison releasee reoffender ("PRR"), Stevens faced a mandatory term of life imprisonment. (*Id.*, Ex. 4; *see also Campbell v. State*, 29 So. 3d 1147, 1149 (Fla. 1st DCA 2010) ("For a first-degree felony punishable by life, such as burglary of a dwelling with an assault [or battery], the PRR statute provides that the defendant must be sentenced to a term of life imprisonment.")). Stevens ultimately pled guilty to both charges and received an agreed-upon sentence of ten years' imprisonment on the burglary count and time served on the injunction-violation count. (Doc. 5-2, Ex. 8).

Soon after sentencing, Stevens unsuccessfully moved to withdraw his plea. (*Id.*, Exs. 9, 10, 11, 12, 13, 14). He then filed a direct appeal, which was also unsuccessful. *Stevens v. State*, 286 So. 3d 255 (Fla. 2d DCA 2019). Next, Stevens sought postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 5-2, Exs. 21, 22, 24). The trial court summarily denied relief, and the appellate court affirmed without an opinion. (*Id.*, Exs. 23, 25; *see also Stevens v. State*, No. 2D20-2349, 2021 WL 1712568 (Fla. 2d DCA Apr. 30, 2021)). This federal habeas petition followed. (Doc. 1).

## **Standards of Review**

**AEDPA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but

4

unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

The state appellate court affirmed Stevens's convictions, as well as the denial of postconviction relief, without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale"

5

and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

**Ineffective Assistance of Counsel**

Stevens alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Stevens must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Stevens must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

**Exhaustion of State Remedies; Procedural Default**

A federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a

7

procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001); *see also Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (stating that unexhausted claims that "would be procedurally barred in state court due to a state-law procedural default" provide no basis for federal habeas relief).

A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## Discussion

**Ground One**

Stevens contends that he was "threatened and coerced" into pleading guilty. (Doc. 1 at 3). According to Stevens, the prosecutor threatened to add a charge of "burglary [with] assault" "if he went to trial." (*Id.*) Stevens also

alleges that the trial court "threatened a charge of tampering with a witness and [] stated that witness testimony on his behalf would be impeached if he went to trial." (*Id.*) Liberally construed, Ground One asserts that the prosecution and the trial court violated Stevens's right to due process under the federal constitution by coercing him to plead guilty.

Respondent correctly contends that this claim is unexhausted and procedurally defaulted. (Doc. 5 at 11-12). Proper exhaustion requires a petitioner to "make the state court aware that the claims asserted present federal constitutional issues." *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Thus, "a petitioner with a claim that could arise under state or federal law must clearly indicate to the state courts that he intends to bring a federal claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015).

Stevens argued in state court that his plea was coerced, but he never made the state court aware that his claim "present[ed] federal constitutional issues." *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352 (11th Cir. 2012). In his motion to withdraw the plea, he argued that "he was coerced into entering the guilty plea by the Assistant State Attorney and the [c]ourt, thus rendering the plea involuntary pursuant to Florida Rule of Appellate Procedure 9.140(b)(2)(A)(ii)(c)."[1] (Doc. 5-2, Ex. 13, at 54). Likewise, in his Rule 3.850 motion, Stevens argued that the trial court and the prosecutor "put[] [him] under duress," "[t]hus rendering the plea involuntary pursuant to Florida [R]ule of Appellate [P]rocedure 9.140(b)(2)(A)(ii)(c)." (*Id.*, Ex. 21, at 9). But nowhere in his state-court filings did Stevens argue that he was coerced into pleading guilty in violation of *federal* law. Nor did he cite any provision of the federal constitution when he presented his coercion argument. As a result, Stevens failed to "clearly indicate to the state courts that he intend[ed] to bring a federal claim." *Preston*, 785 F.3d at 458; *see also Rybolt v. Sec'y, Dep't of Corr.*, No. 8:13-cv-65-CEH-EAJ, 2014 WL 5690497, at *4 (M.D. Fla. Nov. 4, 2014) ("Because it was presented to and ruled on by the state trial court only as a matter of state law, the involuntary plea claim as

---

[1] Florida Rule of Appellate Procedure 9.140(b)(2)(A)(ii)(c) provides that "[a] defendant who pleads guilty or *nolo contendere* may [] directly appeal" "an involuntary plea, if preserved by a motion to withdraw plea."

10

raised in Petitioner's motion to withdraw plea cannot provide federal habeas relief.").

Stevens cannot return to state court to present his unexhausted claim in a successive, untimely postconviction motion. *See* Fla. R. Crim. P. 3.850(b) (imposing two-year window of time to file motion for post-conviction relief). As a result, Ground One is procedurally defaulted. *See Smith*, 256 F.3d at 1138 ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). And because Stevens has not shown that an exception applies to overcome the default, Ground One is barred from federal habeas review.

**Ground Two**

Stevens contends that trial counsel provided ineffective assistance by failing to seek dismissal of the burglary charge, thus rendering his guilty plea "involuntary." (Doc. 1 at 5). According to Stevens, the victim (Michele Behish) testified at her deposition that he "had her permission to be in the home" and "to live there as well." (*Id.*; Doc. 6 at 7). Thus, Stevens argues, the prosecution could not prove that "he remained in the dwelling without permission"—an "essential element" of burglary. (Doc. 1 at 5). Stevens maintains that, had

counsel raised this argument, "there is a reasonable probability that the [c]ourt would have dismissed the burglary offense." (*Id.*)

The postconviction court rejected this claim, holding that "counsel was not ineffective and [Stevens] was not prejudiced." (Doc. 5-2, Ex. 25, at 80). First, the court found that Stevens's proposed motion to dismiss would have been "meritless." (*Id.* at 81). As the court explained, Stevens "essentially allege[d] that there was no *prima facie* case against him because the victim testified in her deposition that [he] had permission to be in her residence." (*Id.*) Stevens "overlook[ed]," however, "that the victim had an injunction against him precluding him from entering or being within 500 feet of her residence at the time of the offense, regardless of whether she gave [him] permission." (*Id.*) Citing Florida law, the court explained that "[a] court order can negate a person's right to enter the premises even if that person owns the premises." (*Id.* (quoting *State v. Suarez-Mesa*, 662 So. 2d 735, 736 (Fla. 2d DCA 1995))). "Thus, even if it [was] undisputed that the victim gave [Stevens] permission to enter the home, it [was] also undisputed that there was an injunction in place at the time of the offense prohibiting entering the home, and the injunction negated [Stevens's] right to enter the victim's home." (*Id.*) This meant that "dismissal would not have been warranted" based on Behish's deposition testimony. (*Id.*)

Second, the court found no "reasonable probability" that Stevens "would have insisted on proceeding to trial" had counsel "file[d] a motion to dismiss." (*Id.*) The court explained that Stevens "was necessarily aware that he had permission to be in the home and that counsel had not filed a motion to dismiss at the time he entered his plea." (*Id.*) Yet Stevens "proceeded to enter his plea, and affirmed, under oath, that he believed the plea was in his best interest, that he was not forced, threatened or promised anything other than what was discussed, and that he was satisfied with counsel's representation." (*Id.*) The court also noted that Stevens "was facing a mandatory life sentence as a PRR on the burglary he was charged with if convicted." (*Id.*) In the court's view, Stevens received substantial benefits from pleading guilty—"the State agreed to waive [his] PRR . . . designation[] and any future charges related to the incident, and [he] received a 10-year sentence with no enhancements and no minimum-mandatories." (*Id.* at 82). In addition, the court (1) reiterated that "any motion to dismiss based on the victim's permission would have been denied," and (2) stated that "the facts of the case would not have been favorable" to Stevens "at a trial." (*Id.* at 81). Based on "the totality of the circumstances," the court found "no reasonable probability that [Stevens] would have insisted on proceeding to trial" had counsel filed a motion to dismiss. (*Id.* at 82).

The rejection of this claim was reasonable. To succeed on an ineffective-assistance claim in the plea context, a petitioner "must prove that: (1) counsel's [performance] was deficient; and (2) but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lynch v. Sec'y, Fla. Dep't of Corr.*, 776 F.3d 1209, 1218 (11th Cir. 2015) (internal quotation marks and citation omitted). "Courts should not upset a plea solely because of *post hoc* assertions from [the petitioner] about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 582 U.S. 357, 369 (2017). Instead, the petitioner must "convince the court that a decision to reject [a] plea [] would have been rational under the circumstances." *Diveroli v. United States*, 803 F.3d 1258, 1265 (11th Cir. 2015) (internal quotation marks and citation omitted).

The postconviction court reasonably determined that counsel was not deficient for failing to file the motion to dismiss. "[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a court "must defer to the state's construction of its own law when the validity of the [ineffective-assistance] claim . . . turns on state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017). Here, the postconviction court found that counsel was not ineffective because, under Florida law, any motion to dismiss based on the victim's consent would have been "meritless." (Doc. 5-2, Ex. 25, at 81). Thus, the state court "already has told us how the issue[]

14

would have been resolved under Florida state law had [counsel] done what [Stevens] argues he should have done." *Herring v. Sec'y. Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005). This Court is bound to defer to that determination. *See Garcia v. Sec'y, Dep't of Corr.*, No. 8:17-cv-2374-KKM-AAS, 2021 WL 1516070, at *7 (M.D. Fla. Apr. 16, 2021) ("Because the state court has determined that a motion to dismiss would not have been granted, this Court cannot reevaluate [the] motion's chance of success under Florida law."), *aff'd*, No. 21-12461, 2023 WL 5927136 (11th Cir. Sept. 12, 2023).

Likewise, the postconviction court reasonably determined that Stevens was not prejudiced. Specifically, Stevens failed to show that "a decision to reject [the] plea [] would have been rational under the circumstances." *Diveroli*, 803 F.3d at 1265 (internal quotation marks and citation omitted). The postconviction court found—and this Court is bound to accept—that "any motion to dismiss based on the victim's permission would have been denied." (Doc. 5-2, Ex. 25, at 81). Moreover, the evidence against Stevens was strong, and by pleading guilty he received a sentence of ten years' imprisonment rather than the mandatory life sentence he faced if he went to trial. In these circumstances, no "rational person would have rejected [Stevens's] plea bargain." *United States v. Miranda-Alfaro*, 462 F. App'x 935, 937 (11th Cir. 2012) (finding no *Strickland* prejudice where "plea bargain lowered [defendant's] sentence of imprisonment by eight years"); *see also Sierra v.*

15

*Fla. Dep't of Corr.*, 657 F. App'x 849, 852 (11th Cir. 2016) (holding that, because petitioner had "no valid defenses, it would not have been rational . . . to have rejected the plea agreement and proceeded to trial").

Because the state court reasonably rejected Stevens's ineffective-assistance claim, Ground Two is denied.

**Ground Three**

Ground Three is largely a retread of Ground Two. In Ground Three, Stevens contends that trial counsel was ineffective for failing to advise him that he "had a viable defense to burglary"—namely, that he was "living at [the victim's] home and [his] permission [to do so] was never revoked." (Doc. 1 at 6). According to Stevens, counsel "led [him] to believe that [this] defense . . . was not a good one and that he should take the plea." (*Id.*) Stevens claims that, but for this allegedly deficient advice, he "would [have] insisted on going to trial." (*Id.*) And, according to Stevens, counsel's allegedly mistaken advice rendered his plea "involuntary." (*Id.*)

The postconviction court rejected this claim on the grounds that Stevens showed neither deficient performance nor prejudice. (Doc. 5-2, Ex. 25, at 78-80). As an initial matter, the court found that "when [he] entered his plea," Stevens "was aware that a potential defense to burglary was that he was living at the home and had permission to be there." (*Id.* at 78). In support, the court noted that this defense "was discussed in [Stevens's]

16

presence at multiple hearings." (*Id.*) For example, at one hearing, defense counsel stated, "I don't think I'm giving away too much here in terms of defense strategy when I say this, but there is certainly a question as—in the case about [] whether this is, in fact, a burglary because Mr. Stevens had been living there. . . . So, it's clear in the deposition that Mr. Stevens had been living there and had permission to be there." (*Id.*, Ex. 6, at 84). Thus, the court found that Stevens "was well aware that his defense to burglary if he had a trial was that he was living at the home with the victim's permission." (*Id.*, Ex. 25, at 78). "Despite his knowledge of this possible defense," Stevens agreed to plead guilty and "affirmed[] under oath[] that he believed the plea was in his best interest." (*Id.*)

The court also found no "reasonable probability that [Stevens] would have insisted on proceeding to trial" but for counsel's allegedly deficient advice. (*Id.*) The court explained that (1) Stevens's "defense that he had permission or was invited to be in the home was not likely to succeed, because the State would have argued that the injunction negated [his] right to enter the home even if he had permission"; (2) the facts of the burglary "would not have been favorable to . . . [Stevens's] case at a trial"; and (3) Stevens avoided a mandatory life sentence by pleading guilty and accepting the State's offer of ten years in prison. (*Id.* at 79-80).

The rejection of this claim was reasonable. As explained above in connection with Ground Two, Stevens failed to show that "a decision to reject [the] plea [] would have been rational under the circumstances." *Diveroli*, 803 F.3d at 1265 (internal quotation marks and citation omitted). Those circumstances included the lack of any viable defense to the burglary charge, the strength of the evidence against Stevens, and the significant benefits he received by pleading guilty. In short, Stevens's "mere allegation that he would have insisted on trial but for his trial counsel's errors, although necessary, is ultimately insufficient to entitle him to relief." *United States v. Clingman*, 288 F.3d 1183, 1186 (10th Cir. 2002). Because the state court reasonably rejected this ineffective-assistance claim, Ground Three is denied.

**Ground Four**

Like Grounds Two and Three, Ground Four rests on the assertion that the burglary charge was "insufficient" because the victim (Behish) allegedly testified that Stevens "was given permission to move back in with her and that permission was never revoked." (Doc. 1 at 8). Stevens argues that trial counsel was ineffective for failing to inform the court that the prosecution was committing "fraud upon the court" by "continuing with the charge" despite Behish's testimony. (*Id.*) According to Stevens, had counsel told the court about this "fraud," "the outcome would have been different" and he "would [have] insisted on going to trial." (*Id.*)

18

The postconviction court rejected this claim because Stevens failed to establish either deficient performance or prejudice. (Doc. 5-2, Ex. 25, at 82-83). The court explained that "at the same hearing [where Stevens] opted to plead guilty," defense counsel "*did* advise the [c]ourt that the victim testified at her deposition that [Stevens] had permission to be in her home." (*Id.* at 82). According to the postconviction court, Stevens "appear[ed] to suggest that counsel should have further (and fraudulently) represented to the [trial] [c]ourt that there was *no other evidence* against him despite the injunction he was charged with violating and the other facts [of the case], and notify the [c]ourt that the State was fraudulently proceeding against him." (*Id.* at 82-83). The postconviction court rejected Stevens's suggestion. (*Id.* at 83). It found that "counsel was not ineffective for failing to misrepresent to the [trial] [c]ourt that the State was proceeding with no evidence." (*Id.*) The court once again explained that "the victim had an injunction against [Stevens], which he and counsel acknowledged, precluding [him] from entering or being within 500 feet of her residence at the time of the offense regardless of whether she gave [him] permission." (*Id.*)

The postconviction court likewise found no prejudice. (*Id.*) It reasoned that (1) "counsel did notify the [trial] [c]ourt that the victim had testified that [Stevens] had permission to be in the home, but [he] still opted to enter his plea that same day"; (2) the evidence against Stevens was strong and "would

19

not have been favorable" to his "case at a trial"; and (3) Stevens "received a 10-year sentence with no enhancements and no minimum-mandatories" rather than the mandatory life sentence he faced as a PRR. (*Id.*) "Considering the totality of the circumstances," the court found "no reasonable probability that [Stevens] would have insisted on proceeding to trial" had counsel raised the "fraud on the court" argument. (*Id.*)

The rejection of this claim was reasonable. The postconviction court correctly found that counsel was not deficient for failing to raise the meritless argument that the prosecution had "no evidence" against Stevens. *See Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim . . . ."). Likewise, the court correctly found no reasonable probability that, had counsel raised the fraud-on-the-court argument, Stevens would have rejected the highly favorable plea deal and "insisted on going to trial." *Lynch*, 776 F.3d at 1218. Accordingly, Ground Four is denied.[2]

---

[2] Stevens also contends that the "charge of burglary [was] insufficient and illegal under rule (11)," apparently a reference to Federal Rule of Criminal Procedure 11. (Doc. 1 at 8). This argument is meritless. "Rule 11 of the Federal Rules of Criminal Procedure . . . is not binding on state courts." *Stano v. Dugger,* 921 F.2d 1125, 1141 (11th Cir. 1991).

## Conclusion

This request for habeas relief is wholly without merit. Instead of claiming his trial counsel was ineffective, Stevens should be thanking his lucky stars he got the excellent legal advice he did. Had he not gotten this excellent legal advice, and instead moved forward with the frivolous arguments he has raised here, it is very likely he would have lost at trial and been given a mandatory *life sentence* as a prison releasee reoffender. As a result of following the legal advice he now claims was ineffective, he will be released after serving a ten-year sentence—precisely the sentence he agreed to serve in his plea agreement.

Accordingly, it is **ORDERED** that Stevens's petition (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Stevens and to **CLOSE** this case.

It is further **ORDERED** that Stevens is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a court must first issue a certificate of appealability. To obtain a certificate of appealability, Stevens must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Stevens has not made the requisite

21

showing. Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Stevens must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE and ORDERED** in Tampa, Florida, this 14th day of March, 2024.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**